IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY ALAN STOBER, | ) | CASE NO. 3:16-cv-01557 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN, Chillicothe Correctional | ) | |
| Institution, | ) | |
| | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Jeremy Alan Stober ("Petitioner" or "Stober"), acting pro se, filed a habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  Stober challenges the constitutionality of his convictions and sentences in *State of Ohio v. Jeremy Stober*, Case No. 2012-CR-00089 (Putnam County).   Doc. 1.

Following a jury trial, on February 28, 2013, Stober was found guilty of one count of sexual battery (Count III), three counts of gross sexual imposition (Counts IV, VI, and VII), and one count of importuning (Count V).  Doc. 7-1, pp. 9-10, 11-14.  Stober was found not guilty of one count of tampering with evidence (Count I), one count of gross sexual imposition (Count II), and one count of attempted sexual battery (Count VIII).  *Id.*  A sentencing hearing was conducted on March 18, 2013.  Doc. 7-1, pp. 11-14.  The trial court sentenced Stober to a total prison term of 10 and 1/2 years. *Id.*

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For the reasons stated herein, the undersigned recommends that the Court DISMISS Grounds One and Three due to procedural default and DISMISS Ground Two due to procedural default and/or DENY the portion of Ground Two that asserts a claim of ineffective assistance of counsel based on not calling a witness, Dale Nienberg, to testify.

## I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Third District Ohio Court of Appeals summarized the facts underlying Stober's convictions:

{¶ 2} The facts relevant to this appeal are as follows. On September 17, 2012, Stober was indicted in an eight count indictment for Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree (Count 1), four counts of Gross Sexual Imposition ("GSI") in violation of R.C. 2907.05(A)(1), all felonies of the fourth degree (Counts 2, 4, 6 and 7), Sexual Battery in violation of R.C. 2907.03(A)(7), a felony of the third degree (Count 3), Importuning in violation of R.C. 2907.07(B)(1), a felony of the fifth degree (Count 5), and Attempted Sexual Battery in violation of R.C. 2923.02(A) and R.C. 2907.03(A)(9), a felony of the fourth degree (Count 8). (Doc. 1). The Bill of Particulars specified that there were three alleged victims of the crimes, and that the crimes took place over a time span ranging from 2001 through 2012. (Doc. 158).

{¶ 3} On September 18, 2012, Stober was arraigned and pled not guilty to the charges against him. (Doc. 18).

{¶ 4} On October 31, 2012, Stober filed a "Motion for Relief from Prejudicial Joinder," arguing that "it would be prejudicial to [Stober's] defense to join together in one trial all eight Counts consisting of different victims, spanning a time frame over eleven years." (Doc. 38).[1] On December 14, 2012, the State filed a response to this motion, contending that the law favored joinder, that the offenses were of the same or similar character, and/or that they were part of a course of criminal conduct. (Doc. 54). The State also contended that the testimony of the separate witnesses would have been admissible anyway under Evid.R. 404(B). (*Id.*)

[FN 1] Stober also filed various other motions including, *inter alia*, two motions in limine (Docs. 40, 42), a motion for change of venue (Doc. 41), a motion to suppress (Doc. 47), and a motion to dismiss Count 1 of the Indictment (Doc. 66).  None of these motions are related to the assignments of error in this appeal, therefore we will not further discuss them.

{¶ 5} On January 7, 2013, a hearing on pending motions was held. Regarding the "Motion for Relief from Prejudicial Joinder," after hearing arguments from both sides, the trial court stated that case law supported joinder for similar type offenses and overruled Stober's motion. (Jan. 7, 2013 Tr. at 7). An entry reflecting this was filed January 22, 2013. (Doc. 71).

{¶ 6} The matter subsequently proceeded to a jury trial, which was held on February 25–28, 2013. At trial, the State called 22 witnesses in its case-in-chief and 5 rebuttal witnesses. Stober called ten witnesses on his behalf and also took the witness stand himself.

{¶ 7} Testimony was presented that Stober was a teacher at Kalida High School, beginning in the fall of 1993, and later employed by the school as a technology coordinator, while still occasionally teaching. (Tr. at 1245). Stober was also the high school girls' varsity volleyball coach for Kalida. (*Id.* at 1246–1247).

{¶ 8} Karen Fortman testified at trial that she took a class taught by Stober in 1994, Stober's second year as a teacher, and that in that class, Stober singled her out and made a "spectacle" of her. (Tr. at 314). Fortman testified that the constant teasing prompted her to leave class one day and go to the guidance office to request out of Stober's class. (Tr. at 315). Fortman testified that after hearing of this, Stober called her to his office after school, closed the door and apologized. (Tr. at 317). According to Fortman, Stober then said that when he looked at Fortman, he thought of her as someone he would want to be married to. (*Id.*)

{¶ 9} Mary Lynn Lanham testified at trial that she also played volleyball for Stober, and graduated in 2001. She testified that while in high school, Stober sent her messages on ICQ chat. (Tr. at 343). Lanham testified that Stober asked her about her personal life. (Tr. at 343–44). Lanham also testified that Stober sent her a message one day that said if Stober "was [her] age [he] could see [himself] with [Lanham], that [she] was his type." (Tr. at 344). Lanham showed her mother this message, who testified to the same at trial. (Tr. at 730). Lanham did not report the incident, however, because she did not want it to affect volleyball, which was very important to her at the time. (Tr. at 345).

{¶ 10} J.L. was the first alleged victim to testify at trial. J.L. testified that she played volleyball for Stober and that she graduated from Kalida in 2002. (Tr. at 357). J.L. testified that one day, Stober called J.L. into his office to talk about a cookout. (*Id.* at 359). J.L. then testified that Stober said he cared about her and her opinion. (*Id.*)

Following this comment, J.L. testified that Stober hugged her, pressing against her, having contact with her breasts. (Tr. at 360–361). J.L. testified that the hug felt sexual to her, had a lasting effect on her, and that she did not reciprocate in any manner. (*Id.*) That contact was the basis for the filing of Count 2, Gross Sexual Imposition ("GSI"), in the indictment.[2] J.L. testified that she told her parents about the incident, but she did not want to give up volleyball, so she did not take it any further. (Tr. at 363–364).

[FN 2] Stober was acquitted of this charge.

{¶ 11} J.L. also testified that years later, in 2008, she began a teaching career as a substitute at Kalida. (Tr. at 369). J .L. testified that one day in 2009 Stober came into her room, shut the door, and asked her why she did not tell Stober about her pregnancy. (Tr. at 373). Stober also said to J.L. that he thought J.L. was going to "wait around for [him]." (*Id.*) J.L. testified that Stober "made some kind of inference about his wife, something happening to his wife," adding, "[w]eren't you going to wait for something to happen to Kristi, so that you and I can be together?" (*Id.*)

{¶ 12} Jenna Missler testified at trial that she was a Spanish teacher at Kalida. (Tr. at 483). Missler testified that Stober initiated instant-messaging contact with her. (Tr. at 484). Missler testified that the messages began by being work related then became more personal. (Tr. at 484). Missler testified that Stober often sent messages to her that ended in "smiley" faces. (*Id.*) Missler testified that the comments Stober sent her, specifically in 2006–2007, eventually crossed the line, and she brought the comments to the sexual harassment director/coordinator. (Tr. at 512).

{¶ 13} C.K. was the second alleged victim who testified at trial. C.K. testified that although she was a student at Kalida, she did not have Stober as a teacher and she did not play volleyball. (Tr. at 535). C.K. testified that she came into school one day after she changed her hair color, and while in class she received a text message about her hair looking nice from an unknown number. (*Id.* at 537). C.K. responded by asking who it was, and received the response, "you'll find out." (*Id.*)

{¶ 14} After talking with other girls, C.K. learned that the number that had messaged her was Stober's. (Tr. at 539). C.K. testified that she and Stober then engaged in regular texting with each other. (Tr. at 542). C.K. testified that the texts were "flirtatious" in nature and that Stober would talk to her about a relationship. (Tr. at 544–545). C.K. testified that Stober told her that he and his wife did not have sex anymore. In addition, C.K. testified that Stober sent her text messages that made her feel good, such as calling her beautiful. (Tr. at 545).

{¶ 15} C.K. testified that some of the text messages were overtly sexual, with Stober going so far as to say that he masturbated while he thought of her, that "he would be so big he would tear [her] up" and that "he could please [her] and he could

4

do so many things with [her]." (Tr. at 542, 544–45) C.K. testified that Stober told her that he had a video of himself masturbating and that he could send it to C.K. (Tr. at 559). Although the video was never sent, this video was later located on one of Stober's cell phones.

{¶ 16} C.K. testified to an incident wherein she was alone with Stober in his office, and Stober grabbed her butt and moaned, "grumbling like he liked it." (Tr. at 546). C.K. testified to a separate incident wherein she was alone with Stober in his office, and Stober exposed his penis to her and caused her to touch it. (Tr. at 565). These incidents, alleged to have occurred between March 2010 and February of 2011 led to the State filing the GSI charge against Stober in Count 4 of the indictment.[3]

> [FN 3] The dates in the Indictment were amended to comport with the evidence presented at trial.  (Tr. at 1380).

{¶ 17} C.K. testified that Stober eventually sent her messages asking about her parents' schedule. (Tr. at 547–48). C.K. testified that she lived with her father, who worked third shift, and that she informed Stober of this. (*Id.*) C.K. testified that about a week after she informed Stober of her father's schedule, Stober showed up at her house around 4 a.m. and knocked on the door. (*Id.* at 552). C.K. testified that

> **I opened the door, I peeked my head around the corner; and I seen him, and I froze. And he had stepped forward into the house, pushing me backwards down onto the couch. Then he started feeling up my shirt and down my shorts, was kissing me. Proceeded to take my shorts off, stuck his fingers inside me and then his penis.**

(Tr. at 552). C.K. testified that she was too scared to say no. (Tr. at 552). C.K. testified that when Stober finished, he pulled up his shorts and walked out the door. (Tr. at 553). According to C.K. this occurred in June of 2010. This incident led to the State filing the Sexual Battery charge in Count 3 of the Indictment.

{¶ 18} C.K. testified that the messages continued from Stober, including continued talk of a potential relationship with C.K. (Tr. at 554). C.K. testified that she told Jeff Burke about the texts and that she was uncomfortable receiving them. (Tr. at 558). She also testified that she told the guidance counselor about receiving messages. (Tr. at 559). C.K. testified that the text messages stopped around Thanksgiving after she graduated from high school. (Tr. at 569). She testified that she had negative emotions, and later texted Stober, "asking him why he did it." (Tr. at 570). According to C.K., Stober messaged back asking who it was that was messaging him. (*Id.*) C.K. testified that she messaged back, calling him "a sick fuck," a text which C.K. testified Stober never acknowledged. (*Id.*)

{¶ 19} C.K. testified she did not initially want to come forward to be involved because she was embarrassed, but did so after H.Z. asked her to do so. (Tr. at 582).

C.K. testified that Stober directed her to erase a text message Stober had sent her about not being able to have kids, so she had nothing to worry about. (Tr. at 661). This was one of the instances of Tampering with Evidence leading to the filing of Count 1 of the Indictment.[4]

[FN 4] Stober was acquitted of this charge.

{¶ 20} H.Z. was the third alleged victim that testified at trial. H.Z. testified that she was a 2012 Kalida graduate who had played volleyball for Stober. (Tr. at 752). H.Z. was also a neighbor of Stober's. (*Id.*) H.Z. testified she was in 7th grade when she received her first text message from Stober, but for years the messages were supportive and volleyball related. (Tr. at 753–754). H.Z. testified that the messages turned sexual when she began dating her first boyfriend. (Tr. at 757). H.Z. testified that Stober told her that her boyfriend did not deserve her and that Stober could do better. (*Id.*)

{¶ 21} H.Z. testified that Stober asked about her sex life and made comments about using his fingers on her, and later, he talked about oral sex. (Tr. at 754–758). These messages Stober sent to H.Z. allegedly occurred prior to H.Z. turning 16 and led to the State filing the Importuning charge in Count 5 of the Indictment.

{¶ 22} According to H.Z., the text messages between her and Stober continued through her sophomore year and into her junior year. (*Id.*) H.Z. testified that some of the messages, but not all, were sexual. (Tr. at 762). H.Z. testified that she had an eating disorder, and was depressed. (Tr. at 767–768). She testified that some of the messages Stober sent her were supportive. (*Id.*) She also testified that Stober talked about his personal life a lot, saying that H.Z. could "fix" Stober's problems with his wife. (Tr. at 764, 766).

{¶ 23} H.Z. testified that the summer after her junior year, in June of 2011, she drove to Stober's residence and stopped in the driveway to drop off a paper for a Volleyball camp. (Tr. at 773). H.Z. testified that Stober reached past the form she had clearly extended out of the car and grabbed her breast. (*Id.*) H.Z. testified that Stober acted as though it was an accident. (Tr. at 774). H.Z. testified that she then left, but later Stober messaged her saying he wished she would come back. (*Id.*) This contact led to filing of the GSI charge in Count 6 of the Indictment.

{¶ 24} H.Z. testified that her senior year the text messages from Stober were more than ever sexual, and that she continued to struggle with emotional problems, an eating disorder, depression, and suicidal thoughts. (Tr. at 777). H.Z. testified that she messaged Stober saying she was fat, and he said "prove to me you're fat." (Tr. at 780). H.Z. sent him a picture of a scale showing her weight. (*Id.*) In response, Stober called her down to his office and told H.Z. to lift up her shirt. (*Id.*) Stober then put his hand on H.Z.'s waist, and ran it along to her "bottom" and then "laughed it off like it was no big deal." (*Id.*) This contact was alleged to have

occurred between August 2011 and October 2011, and led to the filing of the GSI charge in Count 7 of the Indictment.

{¶ 25} H.Z. testified that Stober drove her to a volleyball all-star game that H.Z. was playing in and Stober was coaching. (Tr. at 784). H.Z. testified that on the drive, Stober put his hand on her leg, squeezed it, and said they could go off into the woods. (Tr. at 787). H.Z. declined and they continued on to the game. (*Id.*) H.Z. testified that it was clear to her that Stober's intentions were sexual. (*Id.*) This incident led to the filing of the Attempted Sexual Battery charge in Count 8 of the Indictment.[5]

> [FN 5] Stober was acquitted of this charge.

{¶ 26} H.Z. testified that she was an office assistant at the Kalida High School during her free time, and that she eventually showed one of the messages Stober sent her to Nancy Grote, who worked in the office as a secretary. (Tr. at 796). H.Z. also confided in Amy Recker, a religion teacher, about the messages she was receiving from Stober. (Tr. at 793).

{¶ 27} H.Z. was told that more evidence was needed, so she took it upon herself to initiate text messages with Stober. (Tr. at 797). H.Z. testified that she knew Stober would turn the messaging sexual, and he did. (Tr. at 798–801). Amy Recker then showed the text messages to school authorities, made a transcript of them, and the school authorities contacted the police. (Tr. at 1067).

{¶ 28} The text "transcript" that was typed by Amy Recker was introduced into evidence, but no other text "content" was introduced into the record. (Tr. at 1069). Amy Recker testified that before H.Z. decided to text Stober, they attempted to obtain the records of prior text message content, but were told they could not get them. (Tr. at 1065). However, the State did introduce voluminous cell phone records of Stober, indicating that he had exchanged thousands of text messages with C.K. and H.Z over a period of months, as far back as the records could be traced.[6] The content of prior text messages could not be reproduced.

> [FN 6] While the record reflected that thousands of text messages had been exchanged between Stober and C.K. and Stober and H.Z, Stober maintains on appeal that there were really only five or six text "conversations" per month between Stober and the girls, containing multiple "lines" of texts each, so that the actual number of texts exchanged was not in the thousands.

{¶ 29} In his case-in-chief, Stober called several witnesses who testified that they had never seen or witnessed Stober do anything inappropriate. Several of Stober's former volleyball players testified that Stober would say things like they looked nice, but they did not find the comments inappropriate or offensive. Throughout the trial, Stober's counsel painted the State's case as a "witch hunt."

{¶ 30} Stober also took the stand in his own defense. Stober admitted to texting his volleyball players, and admitted that he messaged H.Z. and C.K. (Tr. at 1250, 1343–1360). Stober testified that his messages with H.Z. began when she would watch Stober's house while he was on vacation. (Tr. at 1250). Stober testified that personal texts were exchanged between him and H.Z., as H.Z. disclosed things to him. (Tr. at 1252).

{¶ 31} Stober testified that he also helped coach baseball, and that a former baseball player of his committed suicide. (Tr. at 1253). Stober testified that the suicide "shook" him and that he "wasn't ever going to let that happen again." (Tr. at 1255). {¶ 32} Stober testified that H.Z. talked about suicide, and that he sent her many supportive messages. (Tr. at 1256–57). Stober testified that he tried to play a father figure role with H.Z. and that any sex-related talk came out of H.Z.'s questions. (Tr. at 1266). Stober testified that H.Z. was not truthful, and that he did not grab H.Z.'s butt or stomach. (Tr. at 1292–1293).

{¶ 33} Stober testified that alleged victim J.L. was a babysitter for his children when they were younger, and that J.L.'s family was close to his. (Tr. at 1279). He testified that he doesn't recall the "hug" J.L. described, and that he was initially happy when J.L. came back to Kalida as a teacher because he thought she could take over coaching volleyball one day. (Tr. at 1281–1285).

{¶ 34} Stober testified that alleged victim C.K. was lying, that he had never been to C.K.'s father's house, and that her allegations were untrue. (Tr. at 1289). Stober also testified that he did not squeeze C.K.'s butt or cause her to touch his penis. (*Id.* at 1289–90) Stober testified that C.K. was also lying about the masturbation video, saying that he made it and offered to send it to his mistress, Lori Fisher, who also testified at trial. (Tr. at 1273). Fisher testified on rebuttal that Stober never mentioned the masturbation video to her or sent it to her. (Tr. at 1404).

*State v. Stober*, 2014-Ohio-1568, 2014 WL 1464226, * 1-6 (Ohio Ct. App. Apr. 14, 2014), *see also* Doc. 7-1, pp. 129-141.

## II.    Procedural Background

### A.  State conviction

On September 17, 2012, the Putnam County Grand Jury indicted Stober on eight counts in Case No. 2012-CR-00089.  Doc. 7-1, pp. 4-8.  The counts were as follows: Count I – tampering with evidence in violation of O.R.C. § 2921.12(A)(1); Count II –

gross sexual imposition in violation of O.R.C. § 2907.05(A)(1); Count III – sexual battery in violation of O.R.C. § 2907.03(A)(7); Count IV – gross sexual imposition in violation of O.R.C. § 2907.05(A)(1); Count V – importuning in violation of O.R.C. § 2907.07(B)(1); Count VI – gross sexual imposition in violation of O.R.C. § 2907.05(A)(1); Count VII – gross sexual imposition in violation of O.R.C. § 2907.05(A)(1); Count VIII – attempted sexual battery in violation of O.R.C. §§ 2923.02(A) & 2907.03(A)(9).  Doc. 7-1, pp. 4-6.  On September 18, 2012, Stober pleaded not guilty to the indictment.  Doc. 7-1, pp. 7-8.

Following a jury trial, on February 28, 2013, Stober was found guilty of one count of sexual battery (Count III), three counts of gross sexual imposition (Counts IV, VI, and VII), and one count of importuning (Count V).  Doc. 7-1, pp. 9-10, 11-14.  Stober was found not guilty of one count of tampering with evidence (Count I), one count of gross sexual imposition (Count II), and one count of attempted sexual battery (Count VIII).  *Id.*  In March 2013,[1] the trial court sentenced Stober to a total prison term of 10 and 1/2 years.[2]  Doc. 7-1, pp. 11-14.[3]

---

[1] The sentencing hearing was held on March 18, 2013.  Doc. 7-1, pp. 11-14.  The journal entry was docketed on March 28, 2013.  *Id.*

[2] The trial court sentenced Stober to 60 months on Count III; 18 months on Count IV; 12 months on Count V; 18 months on Count VI; and 18 months on Count VII.  Doc. 7-1, p. 12.  The trial court ordered that the sentences run consecutive to one another for a total of 10 and 1/2 years.  Doc. 7-1, p. 13.

[3] Stober was subsequently charged with and pleaded guilty to intimidation of victims (O.R.C. § 2921.04(A)) in Case No. 2013-CR-00022.  Doc. 7-1, p. 83; Doc. 7-2, p. 202.  As described in the State's appellate brief, while Stober was awaiting sentencing, Stober offered a soon-to-be-released inmate money in exchange for locating two of the victims, intimidating them and persuading them to recant.  Doc. 7-1, p. 83.  Stober was sentenced to 180 days in Putnam County jail with the sentence to run concurrent to the sentences imposed in Case No. 2012-CR-00089.  Doc. 7-2, p. 202.

**B.  Direct appeal**

On April 8, 2013, Stober, through new counsel counsel, appealed to the Third District Court of Appeals.   Doc. 7-1, pp. 15-16.  In his appellate brief, (Doc. 7-1, pp. 17-73), Stober raised the following assignments of error:

1.    The appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI, and XIV and Ohio Const. art. 1 § 10 when the trial court did not order an acquittal of the three Gross Sexual Imposition and Importuning charges at the close of the state's case as the evidence was insufficient to sustain a conviction.

2.    The trial court committed Plain Error when it gave an incorrect jury instruction that a lesser showing of "force" applied as an element to the Gross Sexual Imposition charges which denied the Defendant due process of law and a fair trial pursuant to the U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10.

3.    The Appellant was denied due process and a fair trial pursuant to the U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 as his convictions for sexual battery and gross sexual imposition (Count IV) was against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented.

4.    The Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the trial court joined the charges and denied his Motion for Relief from Prejudicial Join[d]er.

5.    The Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the trial court improperly allowed into evidence numerous 404(b) witnesses.

6.    The Appellant was denied due process and a Fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the Prosecutor engaged in misconduct during trial and in his closing argument at trial, which conduct substantially prejudiced the Appellant and misled the jury.

7.    The Appellant was denied his Constitutional right to effective assistance of counsel when the Appellant's trial counsel failed to protect Appellant's rights at trial.

8.      The trial court failed to make the necessary findings under R.C. 2929.14(C) for the imposition of consecutive sentences and for imposing a maximum sentence.

9.      The Appellant was denied due process and a fair trial as the errors committed by the Trial Court, the Prosecutor, and the Appellant's trial counsel combined to deny the Appellant a fair trial.

Doc. 7-1, pp. 21-23.  The State filed its appellate brief.  Doc. 7-1, pp. 74-114.  Stober filed a reply brief.  Doc. 7-1, pp. 115-127.  In October 2013, Stober filed a motion for correction or modification of the record pursuant to App. R. 9(E) and he sought leave to file an amended brief. Doc. 7-1, pp. 304-340; Doc. 7-2, pp. 191-192.  In those motions, Stober sought to amend his assignment of error regarding ineffective assistance of trial counsel to include a claim that his trial counsel was ineffective for failing to call Dale Nienberg as a witness and he sought to include in the record an October 22, 2013, affidavit from Mr. Nienberg.  *Id.*  On November 6, 2013, the court of appeals denied Stober's request to correct or modify the record and to amend his brief.  Doc. 7-2, p. 192.

On April 14, 2014, the Third District Court of Appeals issued its opinion, reversing in part and affirming in part the decision of the trial court.  Doc. 7-1, pp. 128-194.  The court of appeals sustained Stober's eighth assignment of error and remanded the case to the trial court for resentencing to consider whether consecutive sentences were appropriate under R.C. 2929.14(C)(4) and, if so, enter proper findings on the record.[4]  Doc. 7-1, pp. 188-193, 194.  The court of appeals overruled the first through seventh and ninth assignments of error.  Doc. 7-1, pp. 143-188, 193.

---

[4] Stober's resentencing hearing was held on May 13, 2014.  Doc. 7-1, pp. 279-282.  The judgment entry of sentence was journalized on May 19, 2014.  *Id.*  The trial court again imposed an aggregate sentence of 10 and 1/2 years.  *Id.* No appeal was taken from the resentencing.

On May 28, 2014, Stober, through his direct appeal counsel, filed a notice of appeal with the Supreme Court of Ohio.  Doc. 7-1, pp. 195-197.  In his memorandum in support of jurisdiction (Doc. 7-1, pp. 198-277), Stober presented the following propositions of law:

1.  The Court should find that the Defendant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the Court allows numerous witnesses to testify to the Defendant's "bad acts" and/or "bad character" when the evidence is not relevant or, if relevant, it's probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury.

2.  The Court should find that the Defendant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the trial court it gave an incorrect jury instruction that a lesser showing of "force" applied as an element to the Gross Sexual Imposition.

3.  The Court should find that a Defendant is deprived of his Constitutional Right to a fair trial due to the ineffectiveness of trial counsel where that trial counsel knowingly and consistently failed to object to hearsay statements that are prejudicial to the defendant's case ignoring all of the rules applicable to hearsay as inherently unreliable.

Doc. 7-1, p. 199.  On September 24, 2014, the Supreme Court of Ohio declined to accept jurisdiction of Stober's appeal.  Doc. 7-1, p. 278.

### C.  Petition for post-conviction relief

During the pendency of his direct appeal, on November 13, 2013, Stober, through new counsel, filed a petition to vacate or set aside judgment of conviction and sentence pursuant to R.C. § 2953.21.  Doc. 7-1, pp. 283-354.  In his petition, Stober argued:[5]

1.  Defense counsel provided ineffective assistance of counsel by failing to call Mr. Nienberg, a former principal and substitute teacher, who's testimony would have impacted the credibility of one of his accusers and making that decision without confirming Mr. Nienberg's alleged recantation;[6]

---

[5] In his petition, Stober's arguments are labeled as causes of action.  Doc. 7-1, pp. 288-292.  He raises three causes of action.  *Id.*.  Each is summarized.

[6] Mr. Nienberg signed an affidavit after trial wherein he stated, "In the late Fall, 2011, while being a substitute teacher, I overheard 3 students talking about Jeremy Stober.  One of the student[s] stated 'Why don't you just make something up about him.'"  Doc. 7-1, pp. 302-303, ¶¶ 3-4 (Dale Nienberg October 22, 2013, affidavit); *see also* Doc. 7-1, pp. 286, 288.  Mr. Nienberg also stated he was interviewed by both the prosecutor and defense attorney

2.      Defense counsel provided ineffective assistance of counsel by failing to have any type of mental health or psychological expert testify concerning H.Z.'s mental health history; and

3.      Petitioner was denied due process and fair trial due to prosecutorial misconduct pertaining to Mr. Nienberg.

Doc. 7-1, pp. 288-292.  On November 20, 2013, the trial court dismissed Stober's petition, finding no substantive grounds for relief in the petition.  Doc. 7-1, pp. 355-358.

On December 18, 2013, Stober, through his same post-conviction counsel, filed a notice of appeal with the Third District Court of Appeals from the trial court's November 20, 2013, dismissal of his petition.  Doc. 7-1, pp. 359-360.   Stober filed his appellate brief (Doc. 7-1, pp. 361-389) wherein he raised the following six assignments of error:

1.      The trial court abused its discretion when it dismissed the Appellant's Post-Conviction Relief (PCR) Petition without a hearing, prejudicing the Appellant and violating his 5th, 6th and 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section I, 10 & 16 of the Ohio Constitution.

2.      The trial court abused its discretion when it determined that witness Dale Nienberg's affidavit and the testimony contained therein would not provide a basis for acquittal at trial and most likely would not have been admissible at trial, prejudicing the Appellant and violating his 5th, 6th & 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

3.      The trial court abused its discretion when it erred in determining that trial counsel['']s non-use of witness Dale Nienberg was reasonable trial strategy, prejudicing the Appellant and violating his 5th, 6th & 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

4.      The trial court abused its discretion when it erred in determining that the failure of trial counsel not to consult with or utilize a mental health expert was reasonable trial strategy and the PCR petition did not establish admissibility of expert testimony, prejudicing the Appellant and violating

_____
regarding what he overheard in the Fall of 2011 and he did not "retract or minimize [his] statements regarding what [he] overheard in the Fall, 2011 concerning the 3 students."  Doc. 7-1, pp. 302-303, ¶¶ 13-14.

his 5th, 6th & 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

5.      The trial court abused its discretion when it erred in determining that the inappropriate actions alleged of the prosecutor are factually unsupported and are not prosecutorial misconduct, prejudicing the Appellant and violating his 5th, 6th and 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

6.      The trial court abused its discretion when it failed to acknowledge the cumulative effect of trial counsel's errors when it decided trial counsel was not ineffective and there was no grounds supporting Prosecutorial Misconduct, prejudicing the Appellant and violating his 5th, 6th & 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

Doc. 7-1, pp. 364-365.  The State filed its brief (Doc. 7-1, pp. 390-405) and Stober filed a reply (Doc. 7-2, pp. 4-15).  Stober's post-conviction counsel filed the notice of appeal and merits brief (Doc. 7-1, pp. 359-360, 361) but Stober's direct appeal counsel filed the reply brief.  Doc. 7-2, p. 4.  On December 22, 2014, the Third District Court of Appeals affirmed the judgment of the trial court.  Doc. 7-2, pp. 16-29.

On February 3, 2015, Stober, through his direct appeal counsel, filed a notice of appeal with the Supreme Court of Ohio from the court of appeals' decision regarding his post-conviction petition.  Doc. 7-2, pp. 30-31.  In Stober's memorandum in support of jurisdiction also filed on February 3, 2015, (Doc. 7-2, pp. 32-55), Stober presented the following proposition of law:

1.      The Court should find that a Defendant is deprived of his Constitutional Right to a fair trial due to the ineffectiveness of trial counsel where that trial counsel knowingly and consistently failed to present testimony at trial from a fact witness that clearly and unequivocally showed that a key witness for the State has a motive and intent to fabricate allegations against the Defendant in a case where no physical evidence existed to the allegations of criminal wrongdoing.

Doc. 7-2, p. 33.  On July 22, 2015, the Supreme Court of Ohio declined to accept jurisdiction of

Stober's appeal.  Doc. 7-2, p. 56.

### D.  Delayed application for reopening appeal (Ohio App. R. 26(B))

On February 19, 2016, Stober, acting pro se, filed a delayed application to reopen his

appeal pursuant to Ohio App. R. 26(B).  Doc. 7-2, pp. 57-145.  Stober argued that his appellate

counsel was ineffective for failing to raise the following assignments of error in his direct appeal:

1.  The appellant was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI, and XIV and Ohio Const. Art 1 § 10 when the state failed to provide exculpatory evidence per discovery rules creating a violation of *Brady v. Maryland*.

2.  The Appellant was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI, and XIV and Ohio Const. Art. 1 § 10 when the prosecutor engaged in withholding and misrepresentation of the evidence.

3.  The Appellant was denied due process and his constitutional right to effective assistance of counsel when Appellant's trial counsel failed to investigate evidence, witnesses, and even failed to ensure the States', as well as, his own subpoenas and discovery were complete and understood before and during trial.

4.  The Appellant was denied due process and a fair trial as the errors committed by the Trial Court, the Prosecutor, and the Appellant's trial and appellate counsel combined to deny the Appellant of a fair trial and appellate proceedings.

Doc. 7-2, pp. 61-65.  On April 20, 2016, the Third District Court of Appeals denied Stober's

26(B) application, finding Stober failed to show good cause for the application being untimely

filed.  Doc. 7-2, pp. 146-147, 194.  The court of appeals further found that Stober failed to show

a genuine issue as to whether he was deprived of effective assistance of counsel on appeal.  *Id.*

On May 5, 2016, Stober, acting pro se, filed a notice of appeal with the Supreme Court of

Ohio (Doc. 7-2, pp. 148-149) and a memorandum in support of jurisdiction (Doc. 7-2, pp. 150-

171).  In his memorandum in support of jurisdiction, Stober raised the following propositions of

law:

1. The court should find that the defendant was deprived of his Constitutional rights when the appellate court determined his delayed motion to reopen his direct appeal pursuant to Rule 26(b) for failing to show "good cause" or a "general issue."

2. The court should find that a defendant is deprived due process and a fair trial pursuant to U.S. Const. Amend. V, VI, and XIV and the Ohio Const. Art. 1 § 10 when the state committed misconduct by withholding exculpatory and material evidence in violation of Brady v. Maryland, as well as, misrepresenting and fabricating allegations and evidence against the defendant in a case where no physical evidence existed to the allegations of criminal wrongdoing.

3. The Court should find that the defendant was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI, and XIV and Ohio Const. Art. 1 § 10 due to ineffective assistance of counsel when trial counsel failed to conduct reasonable investigation and gather exculpatory and material evidence, witnesses, and even failed to ensure the State's, as well as, his own subpoenas and discovery were complete and understood before and during trial.

4. The Court should find that the defendant was denied due process and a fair appeal pursuant to U.S. Const. Amend. V, VI, and XIV and Ohio Const. Art. 1 § 10 due to ineffective assistance of appellate counsel when appellate counsel failed to confer and meet with the defendant about exculpatory and material evidence, witnesses, and other information de hors the record and transcripts during the direct appeal and post-conviction relief proceedings.

5. The Appellant was denied due process and a fair trial as the errors committed by the Trial Court, the Prosecutor, and the Appellant's trial and appellate counsel combined to deny the Appellant of a fair trial and appellate proceedings.

Doc. 7-2, p. 151.  On July 27, 2016, the Supreme Court of Ohio declined to accept jurisdiction of

Stober's appeal.  Doc. 7-2, p. 172.

**E.  Federal habeas corpus**

On June 21, 2016, Stober filed his federal habeas petition pro se.  Doc. 1.  On July 5,

2016, Stober filed for stay and abeyance, which was denied on October 21, 2016.  Doc. 9; Doc.

11.  Respondent filed a Return of Writ on September 6, 2016.  Doc. 7.  On October 17, 2016,
Stober filed a Traverse.  Doc. 10.  Respondent filed a Sur-Reply.  Doc. 12.  The Respondent was
granted leave to file transcripts of state court proceedings under seal (Doc. 14) and the transcripts
were filed under seal on November 21, 2016 (Doc. 15).  On January 11, 2017, Stober filed a
motion for leave to amend his Traverse, arguing that leave was being requested due to newly
discovered evidence based on research his family had conducted and information contained in
transcripts that were filed under seal and not previously available to him.  Doc. 18.  Respondent
opposed the motion (Doc. 19) and Stober filed a reply (Doc. 20).  Stober's request for leave to
amend his Traverse was granted in part and denied in part.  Doc. 21. The Court granted Stober
leave to file an amended Traverse and denied Stober's request to the extent that he sought to
expand the record to include newly discovery evidence and/or to add new grounds for relief or
claims.  Doc. 21.   Stober filed his amended Traverse (Doc. 22) and Respondent filed a Sur-
Reply (Doc. 26).

In his Petition, Stober raises the following three grounds for relief:

**GROUND ONE: The petitioner was deprived due process and a fair trial
pursuant to U.S. Const. Amend. V, VI, and XIV when the prosecutor
committed misconduct by withholding exculpatory and material evidence
(Brady violations), as well as, misrepresenting and fabricating allegations
against the petitioner.**

**Supporting Facts: An email from the new school superintendent as part of a
public records request by the petitioner's family conducted, after trial and
appellate proceedings concluded, show that the prosecutor had the petitioner's
laptop and office computers which contained exculpatory and material
evidence, including a digital footprint with date and time information
throughout the petitioner's proceedings.   Additional investigation by the
petitioner's family, show that discovery evidence involving the petitioner's text
message log, as well as, alleged victims was misrepresented and concealed by
the prosecutor before and during trial.   The prosecutor continued his
misconduct with leading question testimony, witness vouching, and forbidden
inference throughout the trial but particularly when he interfered with a
potential exculpatory witness, Dale Nienberg, trying to change the testimony**

17

he was going to proffer and then by convincing defense attorney that the witness had changed his story.  The petitioner's defense counsel never objected to any of the conduct.  The prosecutor's misconduct was egregious to violate the petitioner's due process rights.

Doc. 1, pp. 5, 16.

> **GROUND TWO: The petitioner was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI, and XIV due to the ineffective assistance of counsel when defense counsel failed to conduct reasonable investigation and gather exculpatory and material evidence, witnesses, and even failed to ensure the State's, as well as, his own subpoenas and discovery were complete and understood before and during trial.**

> **Supporting Facts: The petitioner repeatedly encouraged pre-indictment, defense, and appellate counsel of the importance of his laptop and office computers and the exculpatory and material evidence contained within. Defense counsel had contacted then Superintendent Don Hortsman by letter, who never responded, about the computers as verified during cross-examination testimony at trial.  The fact that defense counsel did not attempt any legal means to retrieve the necessary digital files and footprint data is highly ineffective.  In addition, trial counsel failed to gather his own subpoenas before trial for text message logs for two of the alleged victims and Amy Recker.  Defense counsel also failed to adequately develop his own coinspiracy [sic] theory trial strategy, even faltering on apparent defencies [sic] in witness testimony as documented in the petitioner['s] sworn affidavit in his 26(b) motion.  The failure to adequately investigate and prepare led to a potential biasing witness, Robert Schnippel, to not be called to testify.  Defense counsel fell for the prosecutor's bluff about the witnesses changing his story on a potential exculpatory witness who was available in the court hallway during the proceedings, Dale Nienberg.  To not confer with an available exculpatory witness is highly ineffective, especially one who can support the conspiracy motives of many of the state's witnesses.  Defense counsel[] also did not know what evidence was contained in discovery. The petitioner's phone log actually contained the text message log within that was never examined by the petitioner to disseminate critical details to the allegations, including significant number of lines missing in the purported text message typed by Amy Recker and the misrepresentation of the number of texts between the petitioner and the alleged victims.  Defense counsel's fail[ure] to conduct reasonable investigation and obtain this information, that was accessible by the petitioner's family after the fact and included in his delayed 26(b) motion severely prejudiced the petitioner.**

Doc. 1, pp. 7, 16-17.

**GROUND THREE:  The petitioner was denied due process and a fair appeal pursuant to U.S. Const. Amend. V, VI, and XIV due to the ineffective assistance of appellate counsel when appellate counsel failed to confer and meet with the defendant about exculpatory and material evidence, witnesses, and other information de hors the record and transcripts during the direct appeal and post-conviction relief proceedings.**

**Supporting Facts: As can be proven in the petitioner's sworn affidavit from his 26(b) motion, as part of his the direct appeal and PCR relief, appellate counsel failed to meet with, let alone confer with the petitioner for information de hors the record, failed to conduct reasonable investigation and to raise key issues that could have secured a reversal of his conviction.  As previously stated in grounds one and two, the failure to conduct reasonable investigation and develop exculpatory and material evidence that the petitioner's family was able to obtain, as well as, show the high level of involvement of state's key witnesses, Don Hortsman, Greg and Amy Recker to the initial allegations and motives supports ineffective appellate counsel.  Combine that lack of due diligence to his client and not bringing to light the withholding and/or misunderstanding of text logs in discovery evidence and the misrepresentation of that evidence and other misconduct by the prosecutor is prejudicial.  Yet, the largest deficiency is created by the Brady violation investigation regarding the petitioner's computer and digital dates and time stamped footprint because he failed to meet with his client.  The lack of effective appellate counsel during his first stage of relief severely prejudiced him in the overall effects of his direct appeal and post-conviction relief.**

Doc. 1, pp. 8, 17-18.

## III.     Law and Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

### B. Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[7] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation

---

[7] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans*, 228 F.3d at 681.

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at

806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines

to reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at

138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state

court, and pursue that claim through the state's 'ordinary appellate review procedures.'"

*Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also*

*Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and

every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see*

*also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of

appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer

allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d

at 806.  While the exhaustion requirement is technically satisfied because there are no longer any

state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991),

the petitioner's failure to have the federal claims considered in the state courts constitutes a

procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual

prejudice that resulted from the alleged violation of federal law or that there will be a

fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### C.  Grounds One, Two and Three should be dismissed due to procedural default

Respondent contends that Stober's grounds for relief are subject to dismissal because Stober procedurally defaulted his claims for federal habeas review.  In his Petition, Stober acknowledges that he did not present his grounds for relief in his direct appeal. Doc. 1, pp. 6, 7, 9.  He asserts that his grounds for relief were presented in his delayed motion to reopen his direct appeal pursuant to Ohio App. R. 26(B) and not in his direct appeal "due to lack of consultation of appellate counsel and subsequent failure to raise proper errors." *Id.*

Since Stober did not pursue the claims asserted in his three grounds for relief at each and every level of the state courts, his grounds for relief are procedurally defaulted.  *See Williams*, 460 F.3d at 806 ("[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'") (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).

To the extent that Stober claims that his grounds for relief were preserved when he filed his delayed motion to reopen his direct appeal pursuant to Ohio App. R 26(B), his argument fails with respect to his first ground for relief (prosecutorial misconduct and Brady violations claims)

and second ground for relief (ineffective assistance of trial counsel)[8] because "a Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim[s]."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *see also*, *Glenn v. Bobby*, 2013 WL 3421888, * 10 (N.D. Ohio July 8, 2013) ("When an appellant claims that appellate counsel was ineffective because he failed to raise certain claims, that does not fairly present the underlying substantive claims that appellate counsel failed to raise to the state courts.").

Although Stober raised his third ground for relief (ineffective assistance of appellate counsel) in his Ohio App. R. 26(B) motion, that ground for relief is also procedurally defaulted. As indicated above, "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806 (citing *Maupin*, 785 F.2d at 138).  Applying the foregoing *Maupin* analysis, the undersigned finds that Stober procedurally defaulted Ground Three.

First, Ohio App. R. 26(B)(1) requires that an application for reopening be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  Ohio App. R. 26(B)(1).   Stober did not file his application for reopening within the 90-day period.  The court of appeals rendered its decision with respect to Stober's direct appeal on April 14, 2014.  Doc. 7-1, pp. 128-194.  He did not file his application for reopening until February 19, 2016.  Doc. 7-2, pp. 57-145, 146, 194.

---

[8] As discussed below, if the portion of Ground Two relating to trial counsel's representation with respect to witness Dale Nienberg was exhausted by virtue of presentation of that claim in his post-conviction petition, that claim should be denied.

Second, although the state court of appeals alternatively addressed the merits, the state court of appeals clearly enforced the state's procedural rule when denying the application, finding that Stober failed to file his application within 90 days of the April 14, 2014, appellate judgment and failed to demonstrate good cause for failing to timely file the application.  Doc. 7-2, pp. 146-147.  Thus, the second *Maupin* inquiry is met.  *See Harris v. Reed*, 489 U.S. 255, 264, n. 10, 109 S. Ct. 1038, 1044, 103 L. Ed. 2d 308 (1989) ("Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *see also Kenney v. Haviland*, 2006 WL 2792171, * 6-7 (N.D. Ohio Sept. 26, 2006) (relying on *Harris*, 489 U.S. at 263, 264 when considering the second *Maupin* inquiry and finding that the state court had relied on and enforced a procedural default in denying a petition).

Third, Ohio App. R. 26(B)'s filing requirement is an adequate and independent state ground upon which the state can foreclose review of Stober's claims.  *See Monzo v. Edwards*, 281 F.3d 568, 577-578 (6th Cir. 2002) (enforcement of the ninety-day time limit is an adequate and independent state procedural ground that forecloses federal habeas review, citing *State v. Reddick*, 647 N.E.2d 784, 786 (Ohio 1995));  *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007); *Parker v. Bagley*, 543 F.3d 859, 861-862 (6th Cir. 2008).

For the foregoing reasons, the undersigned concludes that Stober's grounds for relief are procedurally defaulted.  To overcome the procedural fault, Stober must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S.

at 750.  "'[C]ause' under the cause and prejudice test must be something external to the
petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of
cause for a procedural default must ordinarily turn on whether the prisoner can show that some
objective factor external to the defense impeded counsel's efforts to comply with the State's
procedural rule." *Id.*  "A fundamental miscarriage of justice results from the conviction of one
who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764.  A claim of actual innocence requires a
showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal
insufficiency. *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517,
538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the
proposition that "actual innocence means factual innocence, not mere legal insufficiency")
(internal quotations omitted).

Stober's claim that his procedural default should be excused because his appellate
counsel, who also served as counsel during a portion of his post-conviction relief petition, was
constitutionally ineffective fails.  "Attorney error that constitutes ineffective assistance of
counsel is cause" to overcome procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 754
(1991).  However, claims of ineffective assistance of counsel cannot provide cause for the
procedural default of another claim if the ineffective-assistance claim itself is procedurally
defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Although, "that procedural default
may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect
to *that* claim." *Id.* (emphasis original).  Here, as discussed above, Stober procedurally defaulted
his ineffective assistance of appellate counsel claim by failing to timely file his application to
reopen his appeal.  Thus, in order for alleged ineffective assistance of appellate counsel to serve
as cause to excuse the procedural default of his grounds for relief, Stober must demonstrate cause

and prejudice to excuse the procedural default of his ineffective assistance of appellate counsel claim.

With respect to "cause," Stober must demonstrate that an objective external factor prevented his ability to comply with App. R. 26(B) filing requirement.  He has not done so. Stober does not contend that his appellate counsel did not inform of the 90-day filing deadline for reopening his direct appeal.  Doc. 22, p. 18 ("The petitioner is not going to claim that his counsel never told him about the 90 day filing deadline to open his direct appeal (although he didn't find out until after his family had started to gather the new information and through his own research using the Ohio 26(b) Pro Se guide[.]" ). Doc. 22, p. 18.  He argues that it was not until after the court of appeals affirmed the denial of his petition for post-conviction relief in December 2014 and after he read an article from the Ohio Supreme Court that he realized what information he should have been provided, that he was able to convince his family to search for non-disclosed evidence.  Doc. 22, pp. 17-18.  However, a federal habeas petitioner's *pro se* status, ignorance of the law and procedural filing requirements are not enough to establish cause to overcome procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

Furthermore, Stober's arguments in his App. R. 26(B) application were based on information that he knew about or believed was pertinent to his defense well before February 19, 2016, the date he filed his App. R. 26(B) application.  For example, in his App. R. 26(B) application, Stober alleged an assignment of error premised on *Brady* violations pertaining to his laptop and office computers.  Doc. 7-2, pp. 62-63.  In making those arguments, he acknowledged that he "urged all counsel to seek means to obtain school hard drive images" and that "access to his office computers was imperative for the appellant's due process."  Doc. 7-2, p. 62.  Also, in his affidavit in support of his App. R. 26(B) application, Stober states "I tried from the first day I

was placed on leave to get access to all my school computers and files." Doc. 7-2, p. 72, ¶ 10.

These statements make clear that Stober believed that the computer evidence was pertinent to his

defense from the very beginning and also that he had urged counsel to obtain that evidence.

However, Stober has not explained why he waited until February 19, 2016, to assert ineffective

assistance of counsel based on the computer evidence. Stober's reliance on a July 9, 2015, email

reply from the new superintendent, Karl Lammers, that was sent in response to a public records

request made by Stober's family[9] as evidence of an objective factor external to the defense to

overcome procedural default, Doc. 22, pp. 23-24, 50, does not serve to advance his position.

Stober was well aware that he had computers at the school. Further, Stober acknowledges that,

at trial, Detective Roy Sergeant testified to both of Stober's computers being forensically

examined. Doc. 22, p. 26. Thus, as far back as trial, Stober was aware that his computers had

been examined as part of the investigation. Also, while the email from Mr. Lammers was

received in July 2015, Stober fails to explain why his 26(B) application was not filed until

February 2016.

In one of the assignments of error included in his App. R. 26(B) application, Stober

presents arguments about trial counsel not adequately investigating Mr. Nienberg. Doc. 7-2, pp.

64, 76. Arguments relating to Dale Nienberg were raised in Stober's post-conviction petition,

which was filed on November 13, 2013, and denied on November 20, 2013. Doc. 7-1, pp. 283,

355. And in October 2013, in his direct appeal, Stober sought to amend his assignment of error

regarding ineffective assistance of trial counsel to include a claim that his trial counsel was

ineffective for failing to call Mr. Nienberg as a witness and he sought to include in the record an

---

[9] The July 9, 2015, email from Mr. Lammers to the Stober family confirmed that there was a forensic analysis done on the two computers at school and stated, ". . . I am told you should have received everything that was personal from the hard drive once Todd Schroeder [prosecutor] reviewed it and returned a copy to Mr. Hortsman [prior superintendent]. I have not been able to confirm with Mr. Hortsman." Doc. 1-3, p. 1.

October 22, 2013, affidavit from Mr. Nienberg.  Doc. 7-1, pp. 304-340; Doc. 7-2, pp. 191-192.

In that affidavit, Mr. Nienberg stated, "In the late Fall, 2011, while being a substitute teacher, I

overheard 3 students talking about Jeremy Stober.  One of the student[s] stated 'Why don't you

just make something up about him.'"  Doc. 7-1, p. 316, ¶¶ 3-4.  He also stated he was

interviewed by both the prosecutor and defense attorney regarding what he overheard in the Fall

of 2011 and he did not "retract or minimize [his] statements regarding what [he] overheard in the

Fall, 2011 concerning the 3 students."  Doc. 7-1, pp. 316-317, ¶¶ 13-14.  On November 6, 2013,

the court of appeals denied Stober's request to correct or modify the record and to amend his

brief.  Doc. 7-2, p. 192.  Thus, although Stober had asserted alleged trial counsel errors

pertaining to Mr. Nienberg as early as October or November of 2013, Stober does not explain

why he waited until February 19, 2016, to assert that appellate counsel was ineffective for failing

to raise an assignment of error based on matters relating to Mr. Nienberg.

Also, Stober acknowledges that his family received discovery from his appellate counsel

in September 2015, which he indicated included a CD containing his phone logs, (Doc. 7-2, p.

74) but he does not explain why he did not file his application for delayed appeal until February

2016.

The undersigned finds that Stober's reliance upon *Martinez v. Ryan*, 132 S.Ct. 1309

(2012) to argue cause to excuse his procedural default is misplaced.  Doc. 22, pp. 21-23.  In

*Martinez*, the Supreme Court "created an exception to the general rule that ineffective assistance

in a post-conviction proceeding does not establish cause for procedural default."  *Williams v.

Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015).  Thereafter, the Supreme Court in *Trevino v. Thaler*,

133 S.Ct. 1911 (2013) extended *Martinez* to "situations where state law makes it 'highly

unlikely' that a defendant will have a 'meaningful opportunity' to raise ineffective-assistance

claims on direct appeal." *Id.* However, as Stober acknowledges (Doc. 22, p. 23), the Sixth Circuit has not applied *Martinez* in Ohio because Ohio allows ineffective assistance of counsel claims to be raised on direct appeal and has questioned whether *Trevino* applies in Ohio. *Williams*, 792 at 615. Moreover, Stober has failed to explain how his post-conviction counsel was ineffective such that it would serve as "cause" to excuse his procedural default of the grounds for relief raised in this federal habeas proceeding. While Stober notes that his direct appeal counsel was involved in his post-conviction proceedings (Doc. 22, p. 21), his direct appeal counsel did not become involved until the end of those proceedings (Doc. 22, p. 21; *see also* Doc. 7-1, pp. 283, 359, 361 and Doc. 7-2, p. 4 (reflecting that direct appeal counsel was not involved in the post-conviction proceedings until the filing of a reply brief in the court of appeals)).

Having considered Stober's arguments and the record before the Court, the undersigned finds that Stober has failed to demonstrate "cause" sufficient to overcome the procedural default of his ineffective assistance of appellate counsel claim (Ground Three). Since Stober cannot overcome the procedural default of his ineffective assistance of appellate counsel claim, the alleged ineffective assistance of appellate counsel cannot serve as "cause" to excuse Stober's procedural default of his grounds for relief. Furthermore, because Stober has not established "cause," the undersigned need not consider the "prejudice" prong of the procedural default analysis. *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

In addition to attempting to demonstrate "cause" and "prejudice" to excuse his procedural default, Stober argues that his procedural default should be excused based on a claim of actual innocence. Doc. 22, pp. 122-124. A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency. *See*

*Schulp*, 513 U.S. at 324; *Carter*, 443 F.3d at (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).  Stober argues that, based on the evidence, that was not available to the jury, judge or appellate courts, the court can no longer have confidence in the outcome of the trial.  Doc. 22, pp. 123-124.  Even if Stober could demonstrate that the evidence upon which he relies in support of his actual innocence claim is "new" and "reliable," he has not presented evidence showing factual innocence as opposed to mere legal insufficiency.  For example, Stober argues that the "new" evidence would call into question the victims' credibility and undermine their testimony.  Doc. 22, pp. 35-47.  However, impeachment evidence is not sufficient to establish a claim of actual innocence.  *See e.g., Malcum v. Burt*, 276 F.Supp.2d 664, 677 (E.D. Mich. 2003) ("[I]mpeachment evidence is . . . insufficient to justify invoking the fundamental miscarriage of injustice exception to the procedural default rule."); *Plaza v. Hudson*, 2008 WL 5273899, * 10 (N.D. Ohio Dec. 17, 2008) ("[I]mpeachment evidence of the victim's testimony . . . is insufficient to establish a gateway claim of actual innocence.").  Considering the foregoing, the undersigned finds that Stober's procedural default may not be excused based on a claim of actual innocence.

For the reasons explained herein, the undersigned recommends that the Court DISMISS Stober's petition because each of his grounds for relief is procedurally defaulted.  Thus, federal habeas review of the merits of his grounds for relief is precluded.

### D.  The portion of Ground Two asserting alleged ineffective assistance of trial counsel regarding decisions made with respect to witness Dale Nienberg, if not procedurally defaulted, should be found to be without merit and denied

In his petition for post-conviction relief, Stober asserted a claim of ineffective assistance of counsel based on trial counsel's failure to call Mr. Nienberg as a witness.  Doc. 7-1, pp. 288-289.  After the trial court denied his petition for post-conviction relief, Stober filed an appeal

with the court of appeals, raising as an assignment of error the trial court's determination

regarding his claim of ineffective assistance of counsel relating to Mr. Nienberg.  Doc. 7-1, p.

364.  The court of appeals affirmed the trial court's denial of the post-conviction petition (Doc.

7-2, pp. 16-29) and Stober filed an appeal with the Supreme Court of Ohio (Doc. 7-2, pp. 30-55).

The Supreme Court of Ohio declined to accept jurisdiction of Stober's appeal.  Doc. 7-2, p. 56.

While this portion of Ground Two may be procedurally defaulted because it could have been, but

was not raised on direct appeal, the undersigned proceeds to consider the merits of the claim

because the state courts did not find that the claim was procedurally barred by res judicata.  In

his Petition, Stober argues that trial counsel was ineffective because he:

> . . . fell for the prosecutor's bluff about the witness changing his story on a
> potential exculpatory witness who was available in the court hallway during the
> proceedings, Dale Nienberg.  To not confer with an available exculpatory witness
> is highly ineffective, especially one who can support the conspiracy motives of
> many of the state's witnesses.

Doc. 1, pp. 16-17.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const.

Amend. VI.

In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be

shown in order to establish that an attorney was constitutionally ineffective.  *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient."  "This

requires showing that counsel made errors so serious that counsel was not functioning as

'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*   A petitioner must show that

counsel's representation fell below an objective standard of reasonableness based on all the

circumstances surrounding the case.  *Id*. at 688.   "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.*  689.  Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*   In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.*

"Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  "This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*   "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

When a state court reaches the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).

The state court of appeals considered Stober's claims that his trial counsel was ineffective for failing to call Mr. Nienberg as a witness.  In doing so, the court of appeals stated:

{¶ 5} In this case, Stober filed the affidavit of attorney Karl Rissland ("Rissland") in support of his petition for post-conviction relief. Doc. 6. Rissland indicated that he was an experienced trial attorney and appellate attorney in sexual assault cases. *Id.* He indicated that he fully reviewed the record and had reviewed evidence outside of the record.  *Id.* In the affidavit, Rissland states that based upon his review, the failure of Stober's trial counsel to present the testimony of Dale Nienberg ("Nienberg") was unreasonable and prejudicial. *Id.* Nienberg had allegedly overheard a conversation in which the primary accuser was advised by a friend to make up an allegation against Stober in order to get him in trouble. *Id.* Nienberg was not a sympathetic witness towards Stober, so his testimony would have been credible. *Id.* Rissland stated that in a case where the convictions solely rested on the credibility of the victim, the failure to bring out a motive of the victim to lie was ineffective assistance of counsel. *Id.* Rissland also alleged that trial counsel was ineffective for failing to call a psychological expert to explain to the jury how the victim's past history of sexual assault affected her perception of what happened. *Id.*

{¶ 6} Additionally, Stober presented an affidavit of Nienberg as to what his trial testimony would have been had defense counsel called him. *Id.* Nienberg stated in his affidavit that he overheard three students discussing Stober and one of them suggested to another that she should "just make something up about him." *Id.* He stated that the apology mentioned at trial was not about what he overheard, but about the way he had misunderstood the method of the investigation by the school. *Id.* He reiterated that "any statements regarding 'misunderstood' and misstatements' were *not* in reference to what [he] overheard in the Fall, 2011 concerning the 3 students." *Id.* The trial court reviewed these affidavits and determined that the

failure to call Nienberg as a witness was reasonable trial strategy and was not the result of ineffective assistance of counsel. Doc. 7.

{¶ 7} The first issue raised by the petition was whether counsel was effective in his representation of Stober.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."** *State v. Hester* **(1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See** *Vaughn v. Maxwell* **(1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; * * * 915** *State v. Jackson,* **64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*Calhoun, supra* at 289. "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding. *United State v. Dominguez Benitez,* 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.).

{¶ 8} In this case, Stober alleged that his counsel was ineffective for failing to call Nienberg as a witness to a conversation he overheard in which H.Z., the victim of three of the offenses for which he was convicted, was advised to make something up about Stober in order to get rid of him as a teacher. This testimony was desired to challenge the victim's credibility by showing she had a motive to lie. The three charges where H.Z. was the victim were Count 5—importuning, Count 6—gross sexual imposition, and Count 7—gross sexual imposition. Notably other than some text messages that were sexual in nature after the investigation had started and the volume of messages between Stober and H.Z., the only evidence of the events forming the basis of the convictions was H.Z.'s testimony. However, the testimony

of Nienberg, while potentially damaging to the credibility of H.Z., does not demonstrate that the result probably would have been different if Nienberg had testified. The trial court determined that the failure to have Nienberg testify was not prejudicial. Viewing the record as a whole and the allegations outside the record, this court does not find that the trial court abused its discretion in making this decision.

\*\*\*

{¶ 10} In the second assignment of error, Stober claims that the trial court erred by finding that Nienberg's testimony would not have provided a basis for acquittal and likely would not have been admissible at trial. As discussed above, the proposed testimony of Nienberg was not exculpatory in that it did not indicate that the crimes did not occur. Instead, the testimony merely went to the credibility of the victim and provided her with a motive to lie. Nienberg's testimony did not even rise to the level of showing that H.Z. did lie, just that she was encouraged to do so.[1] Thus, this court does not find that the trial court abused its discretion in finding that the testimony would have been the basis of acquittal. The second assignment of error is overruled.

> [FN 1] Additionally, there may have been a hearsay issue in getting the overheard statement admitted at court as Nienberg would be testifying to what a third party stated out of court.

{¶ 11} Next, Stober claims that the trial court erred by finding that the decision not to have Nienberg testify was reasonable trial strategy. This court acknowledges that the testimony of Nienberg might have been helpful to Stober as to the charges related to H.Z. However, the testimony may or may not have been admissible and, as discussed previously, the failure to call Nienberg to testify was not prejudicial. Even if it were unreasonable trial strategy, without a showing of prejudice, it is not reversible error. The third assignment of error is overruled.

*State v. Stober*, 2014-Ohio-5629, ¶¶ 5-8, 2014 WL 7278437, \*\* 3-5 (Ohio App. Ct. Dec. 22, 2014); *see also* Doc. 7-2, pp. 22-26.

Citing to *Strickland* within its analysis of Stober's assignments of error, the state court appeals of reviewed the trial court's determination that trial counsel was not constitutionally ineffective for not calling Mr. Nienberg to testify and concluded that, even if trial counsel's

decision was unreasonable trial strategy, prejudice had not been demonstrated.[10]  The court

stated, "the testimony of Nienberg, while potentially damaging to the credibility of H.Z., does

not demonstrate that the result probably would have been different if Nienberg had testified."

Doc. 7-2, p. 25, ¶ 8.   Stober contends that there was a reasonable probability that the outcome

would have been different if Mr. Nienberg's testimony had been offered because it would have

gone to H.Z.'s credibility, noting that he had been acquitted on other charges where impeaching

evidence had been presented to challenge the victims' credibility.  Doc. 22, p. 90.  The state

court considered that Mr. Nienberg's testimony could potentially be damaging to H.Z.'s

credibility but concluded that the prejudice prong was not met.

As explained above, in order to obtain federal habeas corpus relief, a petitioner must

establish that the state court's decision "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Bobby*, 132 S. Ct. at  27 (quoting *Richter*, 131 S. Ct. at  786–87.  This bar is

"difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*,

131 S. Ct. at 786 (quoting *Jackson*, 443 U.S. at 332 n.5 (Stevens, J., concurring in judgment)).

Considering AEDPA's highly deferential standard, to the extent Stober's claim that his trial

counsel was ineffective for not calling Mr. Nienberg to testify is not procedurally defaulted, the

undersigned finds that Stober has not shown that the state court's determination of that

ineffective assistance of counsel claim was contrary to or an unreasonable application of

*Strickland*.  Accordingly, the undersigned recommends that the Court DENY the portion of

---

[10] With respect to the first prong, the undersigned observes that, in his affidavit, Mr. Nienberg stated that defense counsel had interviewed him regarding the conversation Mr. Nienberg indicated he overheard in the fall of 2011. Doc. 1-14, p. 1, ¶ 13.  Thus, to the extent that Stober contends that defense counsel's performance was deficient because he did not investigate Mr. Nienberg's proposed testimony, his claim is belied by the affidavit.

Ground Two asserting a claim of ineffective assistance of counsel based on not calling Mr. Nienberg to testify.

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court DISMISS Grounds One and Three due to procedural default and DISMISS Ground Two due to procedural default and/or DENY a portion of Ground Two on the merits.

Dated: March 11, 2019                      */s/ Kathleen B. Burke*
                                            _____
                                            Kathleen B. Burke
                                            United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).