UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
JEREMY ALAN STOBER,                   :
                                      :    Case No. 3:16-cv-01557
         Petitioner,                  :
                                      :
vs.                                   :    OPINION & ORDER
                                      :    [Resolving Docs. 27, 28]
WARDEN, Chillicothe Correctional      :
Institution,                          :
                                      :
         Respondent.                  :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Jeremy Stober petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254.

On February 28, 2013, a state court jury found Petitioner Stober guilty of one count of sexual battery, three counts of gross sexual imposition, and one count of importuning. The trial court sentenced Stober to ten- and one-half years imprisonment.

After a mostly unsuccessful direct appeal[1] and request for state post-conviction relief, Stober filed a delayed application to reopen his direct appeal. The state court denied the application.[2]

Stober now brings a habeas petition under 28 U.S.C. 2254.[3] Magistrate Judge Burke issued a report and recommendation ("R&R") recommending that the Court deny Stober's petition.[4] Stober timely objects.[5]

For the following reasons, the Court adopts the holding of the Magistrate Judge's

---

[1] The court of appeals sustained one of Stober's errors and remanded to trial court for resentencing. Stober was again sentenced to ten- and one-half years.
[2] Doc. 7-2 at 146.
[3] Doc. 1.
[4] Doc. 27.
[5] Doc. 28.

Case No. 3:16-cv-01557
Gwin, J.

Report and Recommendation and **DENIES** Petitioner's request for a writ of habeas corpus.

## Discussion

Because Petitioner has objected, the Court reviews the R&R *de novo*.[6]

To succeed with his petition, Stober must show that his conviction resulted from an unreasonable application of clearly established federal law or an unreasonable factual determination.[7] This standard is challenging.[8]

Stober argues a denial of due process and denial of a fair trial due to (i) prosecutorial misconduct and *Brady* violations, (ii) ineffective assistance of trial counsel, and (iii) ineffective assistance of appellate counsel.[9]

### A. Petitioner's Ineffective Assistance of Appellate Counsel Claim Is Procedurally Defaulted.

Stober claims that his appellate counsel was ineffective for failing to confer with him regarding information outside of the record. He also claims appellate counsel failed to investigate and assign errors based on evidence found on Petitioner's work computer and in the victims' text logs. Finally, appellate counsel arguably failed to investigate and expose a claimed conspiracy among several of the state's witnesses.

Stober claims his family's record request to the school superintendent uncovered computer files that show that Stober's schedule prevented him from committing the alleged offenses. Furthermore, his family's analysis of the text logs show that Stober did not exchange "thousands" of texts with his student and instead only sent her 1,167 texts.[10]

---

[6] 28 U.S.C. § 636(b)(1).
[7] 28 U.S.C. § 2254(d).
[8] *Bell v. Cone*, 543 U.S. 447, 455 (2005).
[9] Doc. 1.
[10] Doc. 1-2 at 23.

Finally, he says that facts and events outside of the trial record support his conspiracy theory.[11]

Stober properly exhausted this claim.[12] However, because Stober procedurally defaulted the claim by failing to timely file in state court, the Court cannot reach the merits.

A petitioner procedurally defaults a claim by failing to "comply with state procedural rules."[13] In deciding whether Stober's failure to comply with state procedural rules should be excused, the Court applies the four-part *Maupin* test. Stober did not timely file his application to reopen his direct appeal. The Court considers whether this stops habeas review of the arguments that are stopped under state procedural law because they were not timely made.

Under *Maupin*, the Court must consider: (1) whether there is a state procedural rule that petitioner failed to comply with; (2) whether the state court enforced the rule; (3) whether the rule is an adequate and independent state ground for the state to foreclose review of a federal constitutional claim; and (4) if Stoper did not comply with the state procedural rule and the rule was an adequate and independent state ground, whether Stoper can show cause for failure to follow the rule and resulting prejudice.[14]

---

[11] For example, Stober claims that two of the witnesses may have been motivated by their fear that Stober would take over as head baseball coach. Stober's says that his son and the witnesses' son were vying for the same position on the team. Doc. 1-15 at 2.

[12] Stober raised this claim in his delayed application to reopen his direct appeal under Ohio App. R. 26(B). Stober appealed the denial of his application based on this ground to the Ohio Supreme Court, satisfying the requirement for exhaustion.

[13] *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

[14] *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Stober did not file his application to reopen within the ninety-day time-period for filing the application.[15] Stoper only filed the application to reopen almost two years after the Ohio Court of Appeals denied his appeal. The Ohio Third District Court of Appeals denied his application on that ground.[16] Failure to file a timely application is an adequate and independent state ground that stops review of Stober's untimely constitutional claim.[17]

### a. Petitioner Fails to Show Cause and Prejudice.

Petitioner must show cause for failure to comply with the ninety-day filing deadline. The cause must be something not attributable to the petitioner.[18] Stober puts forth many reasons for his failure to timely file his motion to reopen the direct appeal. None provide cause.

In his application to reopen his direct appeal, Stober blames his delayed filing on "the fact that the defendant did not have any input on his direct appeal or postconviction relief."[19] However, an application to reopen direct appeal may only be based on ineffective assistance of appellate counsel, so the ineffectiveness of Stober's appellate counsel explains the application but does not explain the filing delay.

---

[15] Ohio App. R. 26(B)(1). In fact, the Third District Court of Appels decided Stober's direct appeal on April 14, 2014, but Stober did not file his application to reopen the appeal until almost two years later. Doc. 7-2 at 146-147.
[16] Doc. 7-2 at 146.
[17] *Monzo v. Edwards,* 281 F.3d 568, 577-578 (6th Cir. 2002).
[18] Id. at 576.
[19] Doc. 7-2 at 59.

Stober says that appellate counsel never met with him to discuss issues outside of the record.[20] If anything, this demonstrates that Stober was immediately aware of counsel's ineffective performance. It does not explain the almost two-year filing delay.

Petitioner Stober argues that appellate counsel's failure to investigate and raise the underlying application errors to reopen caused the delay because it left Stober to conduct the investigation himself. This also does not provide cause.[21] Stober put forth several issues in his application to reopen but has not shown sufficient cause for his almost two-year delay in raising them.

Stober claims that appellate counsel was ineffective for failing to raise the alleged *Brady* violations regarding the computer logs. Petitioner says, however, that he "urged all counsel to seek means to obtain school hard drive images."[22] Stober shows that he thought the computer logs were relevant from the beginning of the proceedings and should have been immediately aware of appellant counsel's alleged error in not raising the issue.

Stober blames the former school superintendent for the delay in obtaining the computer records. The only request to the former superintendent Stober points to, however, is one made by trial counsel before the trial.[23] The request was acknowledged, but not fulfilled

---

[20] Doc. 7-2 at 158. "[T]he lack of consultation by appellate counsel during the appellate process for information about the record and evidence, or lack thereof, only known by consulting the defendant was prejudicial to the proceedings."

[21] To show cause for delay in claiming ineffective assistance of appellate counsel, Stober incorrectly relies on *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), which held that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a procedural default of a claim of ineffective assistance *at trial*." *Hodges v. Colson*, 727 F.3d 517, 530-531 (6th Cir. 2013) (quoting Martinez, 132 S.Ct. at 1315) (emphasis in original). The Sixth Circuit has stated that *Martinez* "does not apply in Ohio." *Williams v. Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015). The Sixth Circuit has also declined to extend *Martinez* and its progeny "to allow ineffective assistance by state postconviction counsel to provide cause for the default of claims of ineffective assistance of *appellate counsel*." *Smith v. Warden, Toledo Correctional Institution*, No. 17-3220, 2019 WL 2518311, at *12 (6th Cir. 2019) (emphasis added). In any event, Stober has not made any claims regarding the ineffectiveness of postconviction relief counsel. Such a claim would be necessary to provide cause for the delay in filing the claim regarding ineffective assistance of appellate counsel under *Martinez* and subsequent case law.

[22] Doc. 7-2 at 62.

[23] Doc. 7-2 at 70.

and Stober does not claim that he or counsel followed up or made a similar request to investigators or the prosecutor.

Stober says that his family began gathering information in March 2015,[24] and documents show that they submitted an April 8, 2015, records request to the new superintendent.[25] Stober argues that "the length of time for the defendant's family to coordinate and gather information in the public record request . . . alone would have surpassed the 90 day[]" deadline for filing the application to reopen.[26] This still fails to account for the lack of diligence in pursuing the records in the almost year-long period from the entry of the decision on Stober's direct appeal to the family's submission of the record request.

Stober also claims that appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct. Specifically, Stober says that the prosecution withheld text logs and made inappropriate statements during the trial. As cause for delay, Stober says that he was not able to get discovery materials back from his appellate counsel until September 2015.[27]

Notably, Stober does not state when he requested appellate counsel's materials. In any event, Stober was aware of the existence of the text logs and the prosecutor's statements from the February 2013 trial date. If Petitioner took issue with appellate counsel's method of addressing these issues on appeal, he has shown no cause as to why he waited almost two years to file an application to reopen the direct appeal.

---

[24] Doc. 1-2 at 10.
[25] Doc. 7-2 at 95.
[26] Doc. 7-2 at 156.
[27] Doc. 7-2 at 74.

Finally, Stober claims that appellate counsel failed to raise trial counsel's failure to investigate potential witness Nienberg and to understand the materials uncovered through the defense's subpoenas. The arguments regarding Nienberg were raised in Stober's November 2013 post-conviction relief motion. Stober does not argue why, if he was unsatisfied with post-conviction relief counsel and appellant counsel's job regarding these claims, he waited almost two years to raise them in his application to reopen.[28]

Likewise, Stober was aware of the trial counsel's alleged confusion regarding the subpoenas from the date of the trial and has not provided cause for delay in raising the issue.

Finally, Stober argues that it took a "few months" to convince his family to help gather information[29] and that he was hindered by "a very limited law library and research materials . . . only accessible every other day."[30] He also says that it was not until the denial of his post-conviction relief motion and his reading of a newspaper article that he realized that he needed to take action.[31] However, Stober does not claim that appellate counsel did not inform him of the filing deadline[32] and the difficulties of pro se status cannot provide cause.[33]

---

[28] Stober retained new counsel for his post-conviction relief motion, but that counsel was later replaced by his direct appeal counsel at the reply brief stage before the appellate court. Doc. 28 at 14.
[29] Doc. 22 at 17.
[30] Doc. 22 at 16.
[31] Doc. 22 at 16-17.
[32] Doc. 22 at 17.
[33] *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004), *cert. denied* 543 U.S. 989 (finding that *inter alia* pro se status, ignorance of procedural requirements, and limited time in prison law library were not cause to excuse procedural default); *Dew v. Kelly*, No. 4:11CV2486, 2019 WL 2304678, at *9 (N.D. Ohio May 30, 2019) ("Petitioner's excuse was that his incarcerated status kept him from being able to obtain necessary affidavits and other evidence within Rule 26(B)(1)'s time period. This is not a sufficient basis for finding cause.").

Petitioner cannot show cause for his delay. In its absence, the Court need not consider whether Petitioner has shown prejudice.[34]

Petitioner has procedurally defaulted his claim of ineffective assistance of appellate counsel.

### b. The Underlying Claims Are Also Defaulted.

In his application to reopen his direct appeal, Stober claimed that his appellate counsel's ineffective assistance prevented three of his claims from being included with his direct appeal: his *Brady* claim relating to the computer files and text logs, his prosecutorial misconduct claim, and his ineffective assistance of trial counsel claim relating to the text logs.[35]

However, "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."[36]

In order to excuse the default of these claims, Stober must show cause. Stober's sole cause for failing to properly make these claims is the ineffective assistance of his appellate counsel, a claim that is itself defaulted without cause.[37] Stober has defaulted these claims.

### c. The Prosecutorial Misconduct Claim Is Defaulted on Additional Grounds.

Petitioner makes a prosecutorial misconduct claim based on a variety of alleged

---

[34] *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).
[35] Doc. 7-2 at 61-64. Petitioner also raised other issues in his application to reopen his direct appeal. To extent that these issues were duplicative of claims made in his direct appeal or post-conviction relief, this opinion addresses them separately.
[36] *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (internal quotations and citation omitted).
[37] *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

prosecutor misconduct. Stober claims the prosecutor made improper closing arguments. He also claims that the prosecutor acted improperly by interfering with potential defense witness Dale Nienberg and by convincing defense counsel that Nienberg had changed his story.

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures."[38] Stober defaulted both components of his prosecutorial misconduct claim.

While the claim is defaulted because of Stober's default of his ineffective assistance of appellate counsel claim, discussed *supra*, Stober also defaulted the prosecutorial misconduct claim in earlier attempts to bring it. Stober raised the first prosecutorial misconduct claim in his direct appeal but failed to re-raise the claim with his Ohio Supreme Court appeal. In regards to the Nienberg claim, Stober raised the claim in his post-conviction relief motion, but again defaulted the claim when he failed to appeal the denial.

To overcome the default, Stober must show cause and prejudice.[39] Stober does not say that his appellate counsel, the same attorney for both appeals to the Supreme Court, was ineffective for failing to appeal either of these claims to the Supreme Court. Stober does not claim any other cause for his default of these claims. They are defaulted.

As each of the above stated claims have been defaulted, the Court denies relief for each of these claims.[40]

---

[38] *Williams*, 460 F.3d at 806 (internal quotation and citation omitted).
[39] *Id.* at 805-806.
[40] The second part of Claim One, Petitioner's Brady claim based on the computer records and text messages is also procedurally defaulted, as discussed *infra*.

> **B. Petitioner Fails to Show Ineffective Assistance of Trial Counsel Based on The Nienberg Testimony.**
> **C.**
>> **a. The Claim is Not Defaulted.**

Stober's second claim for relief is based in part on trial counsel's failure to call a witness—Dale Nienberg—to testify at trial. Nienberg was a former principal of the high school and a substitute teacher. Stober asserts that Nienberg would have testified that about eight or nine months before the investigation into Stober began, Nienberg was substitute teaching and overhead two students speaking with the main accuser, H. Z., about Stober. Nienberg heard one of the other students say "Why don't you just make something up about him."[41]

The Court disagrees with the Magistrate Judge's finding that this claim was procedurally defaulted.

A state prisoner must first exhaust state remedies before seeking federal habeas review.[42] Exhaustion requires the petitioner to fairly present the issue to one full round of state appellate review.[43] When a petitioner does not do so, and may no longer do so under a state procedural, he procedurally defaults the claim.[44]

Stober brought his Nienberg testimony claim in his post-conviction relief petition and through each subsequent appeal of that petition. Stober has not defaulted this claim, and the Court considers the merits.[45]

---

[41] Doc. 7-1 at 302.
[42] 28 U.S.C. § 2254(b)(1)(A).
[43] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-844 (1999).
[44] *Mitchell*, 792 F.3d at 613 (6th Cir. 2015).
[45] *See Williams*, 460 F.3d at 799 (explaining that, under Ohio law, a claim of ineffective assistance of counsel that is dependent on facts that are not part of the trial record cannot be raised on direct appeal, but rather must be raised in a post-conviction proceeding).

### b. The State Court Misapplied the *Strickland* Test.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) a "federal court may grant a writ of habeas only if the state court's decision was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[46]

Petitioner claims that the Ohio Court of Appeal's decision that denied his ineffective assistance of counsel claim was an "unreasonable application" of the *Strickland* standard. "For purposes of habeas review, a state court decision . . . is an 'unreasonable application' of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[47]

The Ohio Court of Appeals rejected Petitioner's Nienberg testimony claim and affirmed the lower court's finding that Petitioner had not shown prejudice.[48] Under *Strickland* prejudice exists if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[49] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[50]

Despite initially giving the correct prejudice standard, the Ohio appellate court then used a higher standard. Seemingly out of thin air, the trial court adopted a "basis of

---

[46] *Id.* at 796.
[47] 88 Am. Jur. POF 3d 1 (citing 28 U.S.C. § 2254(d); *Carter v. Mitchell,* 693 F.3d 555 (6th Cir. 2012)).
[48] Doc. 7-2 at 26.
[49] *Strickland v. Washington,* 466 U.S. 694 (1984).
[50] *Id.*

acquittal" standard in its *Strickland* analysis, a mistake that is repeated and affirmed by the appellate court.[51] In addition, the appellate court says that the Nienberg testimony "does not demonstrate that the result *probably* would have been different if Nienberg had testified."[52] This is a higher bar than the "reasonable probability of a different result" standard that *Strickland* requires.

Such standard was inconsistent with *Strickland*.[53]

### c. Trial Counsel's Performance Did Not Constitute Ineffective Assistance.

While the appellate court's opinion was an unreasonable application of federal law, the Court cannot grant habeas relief unless Stober is "in custody in violation of the Constitution or laws or treaties of the United States."[54] To make this determination, the Court must examine the merits of Stober's trial counsel ineffective assistance claim.[55]

Under *Strickland v. Washington*, to make a Sixth Amendment ineffective assistance of counsel claim, a petitioner must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defense.[56] A petitioner alleging ineffective assistance of counsel bears "a heavy burden of proof."[57]

In reviewing ineffective assistance of counsel claims, Courts presume that counsel was competent.[58] "A fair assessment of attorney performance requires that every effort be

---

[51] Doc. 7-2 at 26.
[52] *Id.* at 25 (emphasis added).
[53] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (noting that imposing a higher standard of proof applied to the *Strickland* test would contravene clearly established precedent).
[54] 28 U.S.C. 2254(a).
[55] *West v. Bell*, 550 F.3d 542, 553-554 (6th Cir. 2008), *cert. denied* 559 U.S. 970 (2010).
[56] *Strickland*, 466 U.S. at 668, 687.
[57] *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).
[58] *West*, 550 F.3d at 554.

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[59] Stober must overcome the presumption that trial counsel's decision could be considered sound trial strategy.[60]

Stober says that his counsel was ineffective for failing to present Nienberg's testimony. Stober presents Nienberg's affidavit confirming what Nienberg overheard and affirming that he never retracted his statement. He also points to notes from a police interview with Nienberg where Nienberg recounts the same incident.[61]

Stober contends that Nienberg's testimony would have been exculpatory considering the lack of physical evidence at the trial.[62]

Considering the prosecution's evidence that contradicts Nienberg's statement and the other damaging evidence his testimony could have brought to light, the Court cannot find that trial counsel's performance was deficient and cannot find any failure to call Nienberg sufficiently prejudiced the defense to create a reasonable probability that the result of the trial would have been different.

The prosecution was prepared to rebut Nienberg's testimony with several witnesses who would have testified that Nienberg never told them about the incident and would have

---

[59] *Id.* (citing *Strickland*, 466 U.S. at 689).
[60] *Id.*
[61] Doc. 7-1 at 299, 302-303.
[62] Doc. 1-2 at 47. The state appellate court noted, "other than some text messages that were sexual in nature after the investigation had started and the volume of messages between Stober and H.Z., the only evidence of the events forming the basis of the convictions was H.Z.'s testimony." Doc. 7-2 at 25.

testified that Nienberg had later apologized and recanted.[63] Additionally, there was evidence showing that the three students Nienberg identified were never in class together and that Nienberg never substituted for the class that two students attended together.[64]

Nienberg's testimony would not have been entirely favorable to Stober. Nienberg's Sheriff's office statement shows that months later Nienberg overhead a second conversation H.Z. was involved in. In this statement, H.Z. spoke about someone that was making H.Z. very uncomfortable. Nienberg intervened and encouraged H.Z. to report the unnamed person. About a month later H.Z. reported Stober's behavior and the investigation into Stober's conduct began. Additionally, a separate witness testified that while Nienberg was principal she reported to Nienberg that Stober had sent an inappropriate email to her daughter.[65]

One of the students that Nienberg claimed was involved in the conversation with H.Z. made a statement to the Sheriff's Office. The student indicated that she knew nothing about a statement regarding setting Stober up. She did however, tell the police about additional incidents involving Stober that made her or another feel uncomfortable.[66]

Defendant has not shown that not calling Nienberg was not sound trial strategy to avoid the prosecution's introduction of damaging evidence against Stober.[67] Further, while Stober argues that Nienberg's testimony is exculpatory, the Court points out that the

---

[63] Doc. 7-1 at 301, 328. In fact, the prosecution asked one of its witnesses about this during the trial. Doc. 7-1 at 320. Stober argues that Nienberg's testimony would have rebutted these claims based on his affidavit. Doc. 7-1 at 302-303.
[64] Doc. 7-1 at 300.
[65] Doc. 7-1 at 339.
[66] Doc. 7-1 at 314.
[67] Stickland, 466 U.S. at 689.

overhead statement was not made by H.Z. herself, but by an unnamed individual *to* H.Z. None of the evidence presented indicates H.Z.'s response or whether she assented at the time.

In any event, the Court finds that Stober was not prejudiced by trial counsel's choice. Considering all the available trial evidence the Court cannot find that there was a reasonable probability that the result would have been different if Nienberg had testified.

The Court denies Stober's second claim for relief based on trial counsel's failure to introduce Nienberg's testimony.[68]

### D. Petitioner Is Not Entitled to An Evidentiary Hearing.

Federal courts are prevented from granting evidentiary hearings to petitioners who "fail[] to develop the factual basis of a claim in State court proceedings."[69] A failure to develop the factual basis requires a lack of diligence on the part of the defendant.[70] The defendant must make a reasonable attempt to investigate and pursue claims in state court.

Even if Stober satisfies the requirement for an evidentiary hearing, he is not automatically entitled to one. "A habeas petitioner is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."[71]

Aside from the bare assertion in his objections to the Magistrate Judge's R&R that he

---

[68] Petitioner's ineffective assistance of trial counsel claim based on the text message logs is procedurally defaulted, as discussed *infra*.
[69] 28 U.S.C. § 2254(e)(2).
[70] *Bowling v. Parker*, 344 F.3d 487, 511-512 (6th Cir. 2003), cert. denied 543 U.S. 842 (2004) (citing *Williams v. Taylor*, 529 U.S. 420, 432 (2000)).
[71] *Sawyer v. Hofbauer*, 299 F.3d 610, 611-612 (6th Cir. 2002).

would like an evidentiary hearing, Stober does not sufficiently identify how the proposed hearing could help him or what evidence he seeks to discover.

Most of Stober's claims are procedurally defaulted. The one claim that remains, the ineffective assistance of trial counsel claim, does not allege a sufficient ground for release. The only fact in dispute regarding the testimony, whether Nienberg did or did not retract his statement, is covered by Nienberg's affidavit and other evidence. The critical affiant in the proposed hearing, Nienberg, has since passed away.[72] In any event, said dispute only underscores the tactical nature of counsel's decision not to call Nienberg as a witness.

"Because Petitioner has not established that an evidentiary hearing would have the potential to advance his claim any more than the evidence already contained in the record, a hearing would be superfluous."[73]

The request is denied.

### E. Petitioner Fails to Demonstrate a Miscarriage of Justice.

Petitioner may overcome the default of any of his claims by showing that there will be a fundamental miscarriage of justice if the claims are not considered. "A fundamental miscarriage of justice results from the conviction of one who is actually innocent."[74] Actual innocence means "factual innocence, not mere legal insufficiency."[75] Petitioner has not demonstrated that he is actually innocent and therefore cannot overcome his defaults.

---

[72] *Clark v. Warden*, 934 F.3d 483 (6th Cir. 2019) (Skipping a hearing might also be appropriate . . . when a critical affiant is deceased."). Doc. 7-2 at 37.
[73] *Cornwell v. Bradshaw*, No. 1:03 CV 870, 2005 WL 8161516 (N.D. Ohio, Jan. 14, 2005), *aff'd* 559 F.3d 398 (6th Cir. 2009).
[74] *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (internal quotation and citation omitted).
[75] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## Conclusion

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the holding of the R&R, and **DENIES** Petitioner's request for a writ of habeas corpus. There is no basis upon which to issue a certificate of appealability.[76]

IT IS SO ORDERED.


Dated: September 13, 2019          s/        James S. Gwin
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

---

[76] 28 U.S.C. 2253(c); Fed. R. App. P. 22(b).